UNITED STATES DISTRICT COURT
EASTERN DISRICT OF NEW YORK

-----------------------------------------------------------------x

FLORENCE AYALA and CHRISTINE BAILEY,
individually and on behalf of all others similarly
situated,

                                                                               Case No.:

      Plaintiffs,

  v.

JETBLUE AIRWAYS CORPORATION,

      Defendant.

-----------------------------------------------------------------x

## CLASS ACTION COMPLAINT

      1.      Plaintiffs Florence Ayala and Christine Bailey bring this action on behalf of themselves and all similarly situated New York based JetBlue Airways Corporation ("JetBlue") Flight Attendants (the "Class") against JetBlue for (1) failure to timely pay earned hourly wages in violation of Section 191 of the New York Labor Law, and (2) failure to provide accurate wage statements in violation of Section 195 of the New York Labor Law (the "Wage Theft Prevention Act"), during the applicable six year statute of limitations period prior to the date of the filing of this action (the "Class Period").

<u>New York Labor Law Section 191 Violations</u>

      2.      New York Labor Law Section 191(d) requires "clerical and other workers" be paid earned wages at least semi-monthly. Payment of earned wages, moreover, is required within seven days of the end of the pay period.

1

3. During the Class Period, JetBlue has not paid its New York based flight attendants their total earned wages bi-monthly and has not paid the earned wages within seven days of the end of the pay period. Instead, JetBlue's pay system divides each month into two halves: from the first day of the month until mid-month; and from mid-month until the end of the month.

4. Examples of Plaintiff Ayala's wage statements for the pay periods April 1, 2023 to April 15, 2023 (with an April 20, 2023 pay date), and April 16, 2023– April 30, 2023 (with a May 8, 2023 pay date), have been attached as Exhibit A. The first wage statement does not reflect the actual hours worked and applicable rates of pay, but simply reflects what JetBlue calls a "forward," or partial payment of $1,420.30, based on a pre-set amount of 35 hours; the second wage statement reflects payment for hours worked above 35 hours for the first half of the month, plus all hours worked in the second half of the month. The second wage statement also shows the actual rates of pay. In the second half of the month (April 16 through 30), Plaintiff's wage statement reflects pay for hours worked above 35 hours in the first half of the month plus all hours worked in the second half of the month. The date of payment for the second half of the month was May 8, 2023, 8 days after that pay period closed.

5. In effect, JetBlue pays its Flight Attendants, who are hourly employees, their actual earned wages only once a month, and in the intervening half-month, provides them with a "forward," or partial payment, capped at 35 hours of regular pay. Full pay for wages earned during the first half of the month allegedly is only made 8 days after the end of each following pay period.

<u>New York Labor Law Section 195(3) Violations</u>

6. New York's Wage Theft Prevention Act was enacted in 2010 to provide certain protections to hourly paid employees in this state by ensuring, among other protections, that full explanations are provided to them as to how their wages were calculated at the end of each pay period. Specifically, Section 195(3) mandates that the total of regular and overtime hours in each pay period be specified, along with the rates of pay, as well as the quantum of other forms of compensation such as bonuses and commissions.

7. The statute provides protection for employees against wage theft by, *inter alia*, not allowing employers to delay or 'float' wages when due, as well as enabling employees to determine from a review of their wage statement whether they have been properly paid at the correct hourly rate for the actual hours worked during the applicable pay period. The statute thus relieves the employees of any need to retrieve, maintain, and examine records outside the four corners of their wage statements, such as time punch records, schedules, and other records in the possession of the employer, or to maintain separate manual logs of their work activities themselves to determine whether or not their gross pay is accurate.

8. If, as here, an hourly paid employee receives only a single-number, pre-set or "capped" amount in a pay period reflecting only part of their earned wages in a pay period, instead of a wage statement which specifies the actual hours worked and rates for which he or she is being paid, it is not possible for an employee to determine how many of which type of hours he is being paid for, nor the rate being paid for those hours. The employee also has no way to tell if the capped partial payment is commensurate with the work actually performed during that pay period.

9. The statutory protections of Section 195(3) are especially important for hourly paid Flight Attendants of JetBlue due to the complexity of its pay system with multiple hourly rates applicable to various types of work. However, as described below, JetBlue fails to comply with the requirements of the Section 195(3), thus making it impossible for Flight Attendants to ascertain whether they have been paid the correct rate for the correct number of hours worked and for work actually performed in half their pay periods.

10. Instead, in alternate pay periods the Plaintiffs and the other JetBlue Flight Attendants merely receive payment for a pre-set cap of 35 hours, regardless of the number of hours actually worked. In the following pay period, they receive an adjustment in the previously-estimated advance given to the Flight Attendants at the end of the preceding pay period. As a result, in a pay period where a capped payment occurs, it is not possible for any JetBlue Flight Attendant to determine exactly how many of each type of hours and the rates thereof s/he is actually being paid for without demanding (if it were possible to do so) other data maintained in JetBlue's payroll system, or maintaining highly detailed manual logs of his/her own during each flight day. JetBlue's wage statement system thus injures hourly paid employees like Plaintiffs and the other Flight Attendants by depriving them of explicit rights conferred by New York law. At this juncture, Plaintiffs do not know why JetBlue uses its particular wage statement system, as wage statement systems compliant with New York law are in use in the airline industry.

## PARTIES

11. Plaintiff Florence Ayala is a JetBlue Flight Attendant who is based out of John F. Kennedy International Airport in New York, New York, and a citizen and resident of Orlando, Florida. Plaintiff has worked as a Flight Attendant for JetBlue since March 15, 2015.

12.     Plaintiff Christine Bailey is a JetBlue Flight Attendant who is based out of John F. Kennedy International Airport in New York, New York, and a citizen and resident of Washington State. Plaintiff has worked as a Flight Attendant for JetBlue since February 1, 2016.

13.     Defendant JetBlue Airways Corporation ("JetBlue") is a Delaware corporation with its headquarters in Long Island City, New York. JetBlue provides retail air transportation in New York and on a national and international basis. JetBlue employs Flight Attendants at airport locations in New York.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under the Class Action Fairness Act, Pub. L. 109-2, because the amount in controversy exceeds $5 million in the aggregate, diversity exists between Plaintiffs and the Defendant, and there are at least one hundred members of the Class. 28 U.S.C. § 1332(d)(2), (6).

15.     This Court has personal jurisdiction over Defendant because Defendant maintains its corporate headquarters and conducts substantial business in New York.

16.     Venue is properly before this Court pursuant to 28 U.S.C. §1391(b)(2) as Defendant transacts business and may be found in this District, has its headquarters in this District, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## FACTS

17.     During the relevant time period, Plaintiffs and other Flight Attendants have been employed by JetBlue within the meaning of the New York Labor Law.

5

18. From March 15, 2015, to the present, Plaintiff Ayala has been employed by JetBlue as a non-exempt, hourly paid Flight Attendant based out of JetBlue's terminals at John F. Kennedy International Airport in New York City.

19. From February 1, 2016, to the present, Plaintiff Bailey has been employed by JetBlue as a non-exempt, hourly paid Flight Attendant based out of JetBlue's terminals at John F. Kennedy International Airport in New York City.

20. As Flight Attendants, Plaintiffs' duties include, *inter alia*, assisting with the boarding of the aircraft, providing beverage and/or food service during flight, providing customer service, including, but not limited to, assistance with luggage, providing blankets, pillows and ear phones, cleaning and collecting trash on the plane, collaborating with the cockpit regarding flight status, providing leadership during flight irregularities, communicating with gate agents and ensuring the safety of the passengers. The majority of Plaintiffs and the other Flight Attendant's job is comprised of routine mental and physical work which strictly follows standard operating procedures and protocol.

21. Plaintiffs are required to clock in an hour prior to their first flight of the day for domestic flights and an hour and fifteen minutes prior for international flights. Plaintiffs receive a certain stipend for this pre-flight wait time. Plaintiffs are not paid their regular rate of pay until the doors close on the plane prior to take off.

22. Once the plane lands and arrives at the gate, the regular rate of pay time clock stops. Plaintiffs, however, are still working and required to wait for passengers to exit the plane and provide assistance to passengers as needed during this time. This process may take up to thirty (30) minutes. Plaintiffs and the other Flight Attendants are not compensated for this time.

23. When Plaintiffs and other Flight Attendants are required to remain at the arrival destination for a layover, they are not compensated for their time spent traveling to and from the airport to their temporary accommodations. Plaintiffs and the other Flight Attendants are compensated at a different rate per hour for layover time per diem, excluding commute time.

24. The pay structure for Flight Attendants at JetBlue is complicated and comprised of numerous different potential rates of pay (in addition to or in lieu of the regular or standard hourly rate), plus credits and reserves, that may be applied during the work week.

25. The standard rate of pay increases at JetBlue according to seniority.

26. As alleged above, JetBlue's pay system divides each month into two equal pay periods: from the beginning of the month until mid-month; and from mid-month until month end. The wage statement for the beginning of the month includes a "forwarded" or capped pre-set amount of 35 hours at the employee's regular rate of pay, regardless of the actual hours worked, the type of work performed, and the applicable rates of pay such as regular pay, ground holding time, premium pay, electronic learning, inflight night override, international debrief pay, F1 pay, international pay, and SupBluementary pay.

27. The successive wage statement then reflects payment for hours worked above 35 for the first half of the month at the applicable rates, plus payment for all hours worked in the second half of the month at the applicable rates.

28. As a result of JetBlue's practice of paying Flight Attendants based on pre-set cap of 35 hours for the first half of the month without providing the actual hours worked and the applicable rates of pay, every other wage statement issued by JetBlue to the Flight Attendants fails to reflect the actual hours worked with the applicable rates of pay for the stated pay period, and thus violates the New York Labor Law, Article 6, § 195.

29. Moreover, at the end of the second pay period each month, Plaintiffs and the other Flight Attendants are not paid for all hours of work actually performed in that pay period until 8 days following the end of the month.  As a result, Plaintiffs and the other Flight Attendants are not paid all earned wages for the first half of the month until up to 23 days after those wages have been earned.  Additionally, Plaintiffs and other Fight Attendants are not paid for wages earned in the second half of the month until 8 days after the end of the pay period in which work for those wages has been performed.  At all times, JetBlue fails to pay its Flight Attendants for work performed within the pay period within seven days of the end of their pay periods as required by New York law.

30. Plaintiffs and other JetBlue Flight Attendants have suffered injury in fact as a result of JetBlue' failure to provide wage statements which comply with NYLL, Article 6, § 195(3).  Plaintiffs and other Flight Attendants suffer financial injury through actual underpayment in half their pay periods, as well as delayed wages in all their pay periods, and "downstream consequences" as a result of failing to receive the required wage statement information under the NYLL in half their pay periods where they receive capped wages and not actual wages earned.  Unlike hourly paid workers who receive a standard and consistent hourly rate up to forty hours per week and overtime pay at one and a half times the standard hourly rate, the JetBlue Flight Attendants' hourly rate of pay varies from week to week and depends on numerous factors, including, but not limited to, the type of airliner, the route flown, whether the flight is domestic or international, hold time, layovers and other factors.

31. For pay periods in which Plaintiffs have received wage statements reflecting merely capped amounts of hours, rather than payment of all wages earned for hours actually worked, Plaintiffs have attempted to ascertain whether they have been properly paid by

JetBlue. Despite expenditure of effort and time, it remains unclear – if not impossible - for Plaintiffs to determine whether they have been properly paid. Indeed, as a result of JetBlue's failure to provide necessary information on the Flight Attendants' wage statements as required under the NYLL, Plaintiffs and the other Flight Attendants are unable to ascertain for these pay periods whether they have been properly paid for the actual work performed and hours worked, and if not, to timely advocate for proper pay.

32. As a result of JetBlue' violation of the New York Labor Law, it is impossible for Plaintiffs and other Flight Attendants to ascertain whether the payments for capped hours they are receiving in lieu of wages in half their pay periods correctly reflect the amount of wages they have actually earned, and, therefore, they have no way to advocate for whatever the correct amount those wages may be.

33. In addition, Plaintiffs and the other Flight Attendants have been denied the opportunity to access and use their earned wages in a timely manner, and/or earn interest income on their earned wages, because their earned wages are underpaid and not timely paid in alternate pay periods in which all wages were earned and required to be paid under the New York Labor Law.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs incorporate by reference the foregoing allegations as if set forth herein.

35. Plaintiffs bring this action on behalf of themselves, individually, and on behalf of a Class comprised of the following: All persons who have worked for JetBlue as a Flight Attendant based at a New York airport between the date which is six years before the filing of this complaint until the date a class is certified.

36. There are approximately 2,000 Flight Attendants, if not more, in the Class (the exact number will be in Defendant's records), and the Class is so numerous that joinder of all members is impracticable.

37. Defendant has engaged in the same conduct towards Plaintiffs and the other members of the Class by: (a) failing to provide them with accurate Wage Statements which enable them to ascertain whether they have been properly paid for the total hours worked at the proper rates of pay as required by the New York Labor Law; and (b) failing to timely pay Plaintiffs and the other members of the Class their earned wages bi-monthly and within seven days of the end of the pay period.

38. The claims, defenses, and injuries of Plaintiffs are typical of the claims, defenses, and injuries of the Class.

39. The injuries and damages to Plaintiffs and the Class present questions of law and fact that are common to each member of the Class, and that are common to the Class as a whole.

40. Plaintiffs will fully and adequately protect and represent the Class.

41. The identity of all members of the Class cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from Defendant.

42. The prosecution of separate actions by each member of the Class would create a substantial risk of inconsistent or varying adjudications with regard to individual Class members and would establish incompatible standards of conduct for Defendant.

43. The maintenance of a Class action is the superior means of disposing of the common questions which predominate herein.

## COUNT ONE
## NEW YORK LABOR LAW:
## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS
(Brought On Behalf of Plaintiffs and the Class)

44. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

45. JetBlue has failed to supply Plaintiffs and the Class with an accurate statement of wages with every payment of wages as required by the NYLL, Article 6, § 195(3), which requires the actual dates of work covered by that payment of wages; name of employee, name of employer, address and phone of employer, rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked per week, including overtime hours worked if applicable; deductions; and net wages.

46. Indeed, every other wage statement received by Plaintiffs and the other Flight Attendants reflects merely a pre-set or capped amount of hours during the dates of work covered by that pay period. The estimate does not accurately reflect the actual hours worked and the rates of pay and the basis thereof, for the stated pay period. Each subsequent wage statement reflects payment for the underpaid hours in the preceding pay period plus, presumably, payment for all hours worked in the subsequent pay period.

47. Due to Defendant's violations of NYLL § 195(3), Plaintiffs and the Class are not reasonably able to determine during half their pay periods whether they have been paid the proper rate of pay for the number of hours actually worked. As a result, Plaintiffs and the Class have suffered actual damages, including, but not limited to, the loss of use of money by which these underpayments are less than the actual wages earned and due during these pay

periods, as well as time and effort expended in the attempt to reconcile whether the advances reflect proper pay for the actual hours worked and various tasks performed at varying rates of pay.

48. Plaintiffs and the Class also are entitled to statutory penalties of two hundred and fifty dollars for each workday that Defendant failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorney's fees and costs as provided for by NYLL, Article 6, § 198.

COUNT TWO
NEW YORK LABOR LAW:
FAILURE TO PAY EARNED WAGES BI-MONTHLY
(Brought on behalf of Plaintiffs and the Class)

49. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

50. New York Labor Law Section 191(d) requires "clerical and other workers" to "be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly" and not later than seven calendar days after the end of the pay period in which the wages are earned. "Other workers" is a catch all provision that applies to workers like Plaintiffs and the other Flight Attendants who do not fall within the professional, executive, or administrative employee exemptions. Defendant takes up to 23 days following the end of the pay period to pay Plaintiffs and the Class for wages earned during the first half of the month as the wage statements for the first half of the month and the amounts paid for them do not reflect or constitute actual wages earned. Defendant, moreover, takes 8 days following the end of the pay period to pay Plaintiffs and the Class for wages earned during the second half of month.

51. One of the primary purposes of New York's frequency of payment law is to ensure that workers receive payment as often as possible to meet their expenses and avoid going into debt unnecessarily. Defendant's pay schedules, which underpay Flight Attendants for work performed during the first half of the month then attempt to pay all wages in the second half of the month for actual labor performed during both halves of the month, undermine the objective and policy behind New York's frequency of payment law.

52. Defendant maintained a policy, practice and/or procedure whereby Defendant failed to pay Plaintiffs and the Class for labor within seven (7) days of the end of every pay period and also failed to pay Plaintiffs and the Class their total earned wages for their labor semi-monthly. Instead, Defendant pays Plaintiffs and the Class for a capped amount of hours for the first half of the month and then, at the end of the second half of the month, allegedly pays for both underpaid hours in the first half of the month plus all hours worked in the second half of the month. Thus, Plaintiffs and the Class were not paid for all wages earned within seven days of the end of each pay period and are required to wait up to an additional 23 days for payment of wages earned during the first half of month.

53. Defendant's practice resulted in Plaintiffs and Class not receiving timely payment of wages for labor performed for the benefit of Defendant in compliance with New York law.

54. Plaintiffs and the Class are entitled to up to 100% of the untimely paid wages, plus interest thereon at the legal rate, until payment was and is actually made.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated persons, respectfully requests this Court grant the following relief:

A. Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

C. Actual damages to be determined at trial;

D. Injunctive relief, including, but not limited to, requiring JetBlue to provide accurate wage statements in compliance with the NYLL.

E. Statutory penalties of two hundred and fifty dollars for each workday that Defendant failed to provide Plaintiffs and the Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6, §198.

F. Prejudgment and post-judgment interest at the legal rate;

G. Reasonable attorney's fees and costs of the action; and

H. Such other relief as this Court shall deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: January 11, 2024
New York, New York

GISKAN SOLOTAROFF & ANDERSON LLP

/s/ *Catherine E. Anderson*
Catherine E. Anderson
canderson@gslawny.com
90 Broad Street, 2nd Floor
New York, New York 10004
(212) 847-8315

\

David R. Markham, Esq.  (Pro Hac Vice Pending)
dmarkham@markham-law.com
Maggie Realin, Esq. (Pro Hac Vice Pending)

mrealin@markham-law.com
THE MARKHAM LAW FIRM
888 Prospect St., Suite 200
La Jolla, California 92037
Tel: (619) 399-3995
Fax: (619) 615-2067

Jeffrey Hogue, Esq. (Pro Hac Vice Pending)
jhogue@hoguebelonglaw.com
Tyler Belong, Esq. (Pro Hac Vice Pending)
tbelong@hoguebelonglaw.com
HOGUE BELONG LAW
170 Laurel Street
San Diego, California 92101
Tel: (619) 238-4720

Roosevelt N. Nesmith, Esq.
roosevelt@nesmithlaw.com
LAW OFFICE OF
ROOSEVELT N. NESMITH LLC
400 Broadacres Drive, Suite 260
Bloomfield, New Jersey 07003
Tel: (973) 259-6990
Fax: (866) 848-1368

*Counsel for Plaintiffs and the Class*