UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FLORENCE AYALA and CHRISTINE BAILEY,   :
individually and on behalf of all others similarly   :
situated,   :
   :
               Plaintiffs,   :        **MEMORANDUM & ORDER**
   :            24-cv-259 (DLI)(CHK)
        -against-   :
   :
JETBLUE AIRWAYS CORPORATION,   :
   :
               Defendant.   :
------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On January 11, 2024, Florence Ayala ("Ayala") and Christine Bailey ("Bailey") (collectively, "Plaintiffs") brought this putative collective action on behalf of themselves and "all similarly situated New York based JetBlue Airways Corporation Flight Attendants," pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), (6), against JetBlue Airways Corporation ("Defendant"). Plaintiffs allege Defendant violated the New York Labor Law ("NYLL") by failing to pay them with the frequency required by NYLL § 191 and to provide accurate wage statements as required by § 195. Compl., Dkt. Entry No. 1. In lieu of an answer, Defendant moved to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) ("Rules") and for failure to state a claim pursuant to Rule 12(b)(6). Mem. Support Def. Mot. to Dismiss ("Mot."), Dkt. Entry No. 16; Killeen Decl., Dkt. Entry No. 17; Cashier Decl., Dkt. Entry No. 18. Plaintiffs opposed the Motion. Pls.' Opp'n to Mot. ("Opp'n"), Dkt. Entry No. 24. Defendant replied. Def.'s Reply ("Reply"), Dkt. Entry No. 25.

For the reasons set forth below, Defendant's motion is granted because the Court lacks subject matter jurisdiction over both Plaintiffs' Section 191 and Section 195 claims. Accordingly, the Court "lacks the power to adjudicate the merits of the case" pursuant to Rule 12(b)(6) and will

not address Defendant's motion on this ground. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016) (internal citations omitted).

## BACKGROUND[1]

Defendant employs Plaintiffs as flight attendants based out of John F. Kennedy International Airport. Compl. ¶ 11. Plaintiffs' duties involve ensuring the safety of passengers, providing customer service, and helping to ensure that flights run smoothly. Compl. ¶ 20. They are hourly employees, and a complex pay structure governs disbursement of their wages. *Id.* ¶¶ 5, 21–29. This structure is "compris[ed] of numerous different potential rates of pay (in addition to or in lieu of the regular or standard hourly rate), plus credits and reserves, that may be applied during the work week." *Id.* ¶ 24. Plaintiffs are paid their regular hourly rate while in-flight ("in-flight rate"), which is determined by seniority, but are paid at different rates in certain circumstances, such as for "ground holding time, premium pay, electronic learning, inflight [sic] night override, international debrief pay, F1 pay, international pay, and SupBluementary pay." *Id.* ¶ 26. Moreover, Plaintiffs' rate of pay can change "depend[ing] on numerous factors, including, but not limited to, the type of airliner, the route flown, whether the flight is domestic or international, hold time, layovers, and other factors." *Id.* ¶ 30.

Plaintiffs receive payment and wage statements on the 8th and 20th of every month (respectively, the "First Paycheck" and "Second Paycheck"). *Id.* ¶¶ 3–4. The First Paycheck includes payment for a "capped pre-set amount of 35 hours" of work at Plaintiffs' in-flight rate, regardless of the number of hours actually worked, the type of work, or the applicable rate. *Id.* ¶¶ 4, 10, 26; *See*, Compl., Ex. A at 1, Dkt. Entry No. 1-1 (example of one of Ayala's First Paychecks). The basis of pay for the Second Paycheck is more complicated. It includes the balance of payment

---

[1] The facts below are taken from the Complaint. They are accepted as true as required at this stage of the case. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).

2

for hours actually worked in the first pay period at applicable rates, as well as payment for all hours worked in the second pay period at applicable rates. *Id.* ¶¶ 4, 27; *See*, Compl., Ex. A at 2 (example of one of Ayala's Second Paychecks). Accordingly, the Second Paycheck compensates Plaintiffs for all hours worked in the preceding *month* at applicable rates, less wages paid in the First Paycheck for 35 hours at in-flight rates. *Id.* Plaintiffs assert that this compensation structure violates NYLL § 191 because they are not paid "wages earned" on a semimonthly basis. *Id.* ¶¶ 50–53.

Plaintiffs also contend that the wage statements they receive with their First Paychecks ("First Wage Statements") are deficient pursuant to NYLL § 195, because they state that Plaintiffs worked thirty-five hours at in-flight rates during the first pay period rather than listing the number of hours actually worked and the relevant applicable rates. *Id.* ¶¶ 45–47. Plaintiffs allege that this purported deficiency precludes "JetBlue Flight Attendant[s] [from] determin[ing] exactly how many of each type of hours [sic] and the rates thereof s/he is actually being paid for [in the first pay period] without demanding (if it were possible to do so) other data maintained in JetBlue's payroll system, or maintaining highly detailed manual logs of his/her own [hours and rates] during each flight day." *Id.* ¶ 10. Plaintiffs allege that they have attempted to ascertain whether they have been paid in full but "it remains unclear – if not impossible" for them to determine "whether they have been properly paid for the actual work performed and hours worked and if not, to timely advocate for proper pay." *Id.* ¶ 31.

Defendant argues that Plaintiffs' Section 191 claim must be dismissed because: (1) Plaintiffs lack standing as they do not adequately allege that they suffered a concrete injury in fact; (2) the Railway Labor Act ("RLA") preempts the Section 191 claim; (3) Section 191 does not create a private cause of action; and (4) Plaintiffs admit that Defendant complied fully with Section 191. Mot. at 9, 13–20. Defendant further argues that Plaintiffs' Section 195 claim should be

3

dismissed because: (1) Plaintiffs lack standing as they fail to allege a concrete injury in fact; and (2) Defendant's wage statements "accurately report the manner in which Plaintiffs are paid" in compliance with Section 195. *Id.* at 10–13.

## **LEGAL STANDARD**

Subject matter jurisdiction is a threshold issue. Thus, where a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the Court first must address the 12(b)(1) motion. *Sherman v. Black,* 510 F. Supp.2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990)). It is axiomatic "that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quotation marks omitted). "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*." *Id*.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). When considering a motion to dismiss for lack of subject matter jurisdiction, the Court accepts as true all factual allegations in the Complaint but does not draw inferences favorable to the party asserting jurisdiction. *See*, *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). The Court may consider evidence outside of the pleadings. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

4

## DISCUSSION

I.    **Class Action Fairness Act ("CAFA")**

"Courts have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2d Cir. 2010). Accordingly, the Court first considers whether it has jurisdiction pursuant to CAFA even though this issue is not disputed by the parties.

Pursuant to CAFA, the Court possesses original federal jurisdiction "over any class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6)).  The party asserting subject matter jurisdiction under CAFA "bears the burden of establishing that the case is properly in federal court[.]"  *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp.2d 448, 450–51 (S.D.N.Y. 2009) (citing *DiTolla v. Doral Dental IPA of N.Y., LLC*, 469 F.3d 271, 275 (2d Cir. 2006)).

The Complaint satisfies all three requirements.  First, Plaintiffs allege that the putative class includes at least 2,000 New York based JetBlue flight attendants, which far exceeds CAFA's minimum requirement of 100 members  Compl. at ¶ 36.  Second, there is minimal diversity between the Parties.  Ayala is a citizen of Florida, and Bailey is a citizen of Washington State.  *Id.* ¶¶ 11–12.  Defendant is a Delaware corporation with headquarters in New York, making it a citizen of both Delaware and New York.  *Id.* ¶ 13; *See,* 28 U.S.C. § 1332(c)(1) (stating a corporation is a citizen of every state in which it is incorporated and the state where it has its principal place of business); *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010)) ("A corporation's principal place of business under § 1332 is . . .  the place where the corporation maintains its headquarters—provided that the headquarters

is the actual center of direction, control, and coordination, *i.e.*, the nerve center.'").

Third, the Complaint represents that the amount in controversy exceeds $5,000,000. *See*, *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (citation omitted) (recognizing a rebuttable presumption that the face of the complaint is a good faith representation of the amount in controversy). In addition to actual damages, Plaintiffs seek "[s]tatutory penalties of $250.00 for each workday that Defendant failed to provide Plaintiffs and the putative class with accurate wage statements, or a total of five thousand dollars each, as provided for by" NYLL § 198. Compl. at 14. As there are at least 2,000 putative class members with claims reaching as far back as six years, the Complaint demonstrates to a "reasonable probability" that the amount in controversy exceeds CAFA's threshold. *See*, *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (internal citation omitted). Therefore, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) and proceeds to address Defendant's jurisdictional arguments.

## II.   Section 191 Claim

Defendant argues that Plaintiffs' Section 191 claim must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because Plaintiffs lack standing and the claim is preempted by the RLA.[2] Mot. at 9, 13–20. As the Court finds that Plaintiffs' Section 191 claim is preempted, it need not address Defendant's standing argument.

"The RLA, which was extended in 1936 to cover the airline industry, . . . sets up a mandatory arbitral mechanism to handle disputes 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994) (quoting 45 U.S.C. § 153(i)). Accordingly, state law labor claims that are "substantially dependent upon analysis of the terms of

---

[2] Defendant additionally argues that Section 191 does not provide a private cause of action entitling employees to recover penalties. *See*, Mot. at 14-15. However, the Court need not address this argument because Plaintiff's claim is preempted as discussed below.

an agreement made between the parties in a labor contract" are preempted by the RLA. *Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003); *See, Hawaiian Airlines, Inc.*, 512 U.S. at 260, 262–63, 264 n.9 (finding that preemption standards under the RLA and the Labor Management Relations Act are "virtually identical" and require the same analysis). "Not every suit concerning employment or tangentially involving a [collective bargaining agreement], however, is preempted[.]" *Vera*, 335 F.3d at 114 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). Indeed, if state law claims "can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for . . . preemption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 400 (1988).

Defendant argues that Plaintiffs' Section 191 claim is preempted by the RLA because the language of Section 191 requires the Court to interpret and analyze the parties' collective bargaining agreement ("CBA"), which governs Plaintiffs' employment and sets forth their compensation schedule. Mot. at 20–22; Reply at 8; Cashier Decl. ¶¶ 8–10. Plaintiffs counter that resolution of their claim does not require interpretation of the CBA and, therefore, is not preempted. Opp'n at 10–11. They assert that Section 191 establishes substantive rights independent of the CBA and "neither party . . . disputes what the CBA states." *Id.* at 12.

The Court finds that Plaintiffs' Section 191 claim is "a quintessentially preempted claim because it requires an interpretation of the CBA." *Cabredo v. Mount Sinai Hosps. Grp., Inc.*, 2017 WL 11637483, at *2 (S.D.N.Y. Apr. 12, 2017) (citing *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 231 (2d Cir. 2006); *Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 213 (1985)). It is undisputed that Plaintiffs are "other workers" within the meaning of Section 191. Compl. ¶¶ 2, 50; Mot. at 9. Section 191(1)(d) provides that a "clerical or other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." NYLL § 191(1)(d).

7

Accordingly, if Defendant paid Plaintiffs semimonthly on regular predetermined paydays, it "violated the NYLL only to the extent that it has breached the CBA, which is a clear basis for preemption" under the RLA. *Cabredo*, 2017 WL 11637483, at *2 (citing *Ellis v. Harpercollins Publishers*, 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000); *Vera*, 335 F.3d at 113–14; *Salamea v. Macy's E., Inc.*, 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006)).

Plaintiffs contend that the Court only needs to refer to, but not interpret, the CBA because its terms are undisputed. Opp'n at 12–15. This argument is without merit. Plaintiffs concede that they are paid semimonthly on days designated in advance. *Id.* ¶¶ 3–4. Therefore, they can only argue that Defendant failed to "pa[y] the wages earned in accordance with the agreed terms of [the CBA]." NYLL § 191(1)(d). Analysis of this claim indisputably would require the Court to interpret the CBA and determine whether Defendant is in breach. Plaintiffs' efforts to divert the Court's attention away from Section 191(1)(d)'s explicit language by quoting excerpts of it and failing to reference the CBA in the Complaint, even though the CBA is the source of the compensation structure, are unavailing. *See*, Compl. ¶¶ 2–5, 21–29; Opp'n at 7. Accordingly, as Plaintiffs' claim is preempted, it is dismissed. *See*, *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 277 (2d Cir. 2005) (holding that state law claims are subject to "ordinary preemption," not "complete preemption" pursuant to the RLA, and therefore cannot be converted to federal claims).

## III.    Section 195 Claim

Defendant further argues that Plaintiffs lack standing to assert their Section 195 claim because they fail to allege "any tangible injury . . . suffered as a result of the alleged statutorily deficient wage statements." Mot. at 12. Section 195 requires employers to provide employees with a  statement each time wages are paid detailing the calculation of regular and overtime pay for each pay period, as well as deductions and allowances. Plaintiffs contend that Defendant's violation of Section 195 caused them to suffer a concrete injury in fact from the "loss of the time

8

value of money." Opp'n at 4–5 (explaining that the first wage statements "den[y] Plaintiffs the opportunity to access and use their earned wages in a timely manner, and/or earn interest income on their earned wages"); Compl. ¶¶ 30–35.

Article III of the U.S. Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case — in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal citation omitted). To establish standing, a plaintiff must show that: (1) he or she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury likely was caused by Defendant; and (3) the injury likely would be redressed by judicial relief. *See*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

The Supreme Court set forth the framework for determining whether a plaintiff has adequately alleged a concrete injury in fact in *TransUnion*. *See also, Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016), *as revised* (May 24, 2016) (holding that Congress may elevate harms where none existed before, but a statutory violation on its own will not establish a concrete harm). In *TransUnion*, the Supreme Court explained that concrete harms can be classified as tangible or intangible. 594 U.S. at 425. Generally, tangible harms are the easiest to identify and encompass physical or monetary injury to the plaintiff. *Id*. Intangible harms are those that bear a "close relationship" to injuries traditionally recognized as providing a basis for lawsuits. *Id*. For courts to inquire whether a purported intangible harm bears that close relationship, a plaintiff must identify a common law analogue. *Id*. at 424–25. The Supreme Court has identified several concrete intangible harms, including informational harms, reputational harms, and disclosure of private information. *Id*. at 424–25, 441. While intangible harms such as informational injuries

9

may be considered "concrete," a plaintiff must identify "downstream consequences" from failing to receive the required information. *Id.* at 441–42.

To show "downstream consequences," a plaintiff must allege that he has "an interest in using the information . . . beyond bringing [his] lawsuit." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022). In *Guthrie v. Rainbow Fencing Inc.*,[3] the Second Circuit applied the *TransUnion* framework to determine whether a plaintiff suffered a concrete injury and thus had standing to bring a Section 195 claim against his employer. 113 F.4th 300, 305 (2d Cir. 2024). It held that "a plaintiff cannot rely on technical violations of the Labor Law but must allege actual injuries suffered as a result of the alleged wage notice and wage statements violations." *Id.* While a deficient wage notice may create a concrete intangible "informational injury" for the purposes of Article III standing, the Second Circuit found that there must be "some causal connection between the lack of accurate notices and a downstream harm," and the plaintiff cannot "rely on speculation and conjecture." *Id.* at 308–09 (internal quotation marks and citations omitted).

Here, Plaintiffs allege four downstream harms purportedly resulting from the First Wage Statement's alleged deficiencies: (1) deprivation of their rights under New York law; (2) underpayment and delayed payment of wages earned for the first pay period; (3) uncertainty as to whether they were paid for all hours actually worked in the first pay period, preventing them from advocating for proper pay as necessary; and (4) time and effort spent in attempting to ascertain whether their paychecks account for all hours actually worked. Compl. ¶¶ 8–20, 30–31, 47. None of these alleged downstream consequences confer a concrete informational injury for purposes of standing.

---

[3] *Guthrie* was decided after the parties submitted their briefs. Nevertheless, *Guthrie* clearly is controlling and must guide the Court's analysis here.

Plaintiffs' first and second alleged downstream harms are disposed of easily.  With respect to the first, a violation of a statutory right alone cannot constitute an injury in fact.  *TransUnion*, 594 U.S. at  414.  With respect to the second, it is unreasonable to conclude that a deficient wage statement, in and of itself, has the "causal connection" required by *Guthrie* to the disbursement of insufficient or delayed wages.  Instead, as alleged by Plaintiff, any underpayment or delayed payment is caused by the parties' agreed upon compensation structure as set forth in the CBA. Therefore, these alleged downstream harms are insufficient for the purposes of the concrete harm analysis.

Plaintiffs' third and fourth alleged downstream harms, namely uncertainty that they were paid in full after receiving their First Wage Statement, and time and effort spent attempting to discern whether they were paid in full, require a more detailed discussion.  Plaintiffs allege that they are "unable to ascertain for th[e first] pay periods whether they have been properly paid for the actual work performed and hours worked, and if not, to timely advocate for proper pay." *Id*. ¶ 32; *See also*, Compl. ¶ 8.  However, Plaintiffs concurrently allege that "their wages are [sic] underpaid and not timely paid in" the First Paychecks.  *Id*. ¶ 33; *See also*, Compl. ¶ 46 ("Each subsequent wage statement reflects payment for the underpaid hours in the preceding pay period . . . ."); Id. ¶ 37 ("Plaintiffs and the Class have suffered . . . the loss of use of money" due them and not paid as a result of these underpayments.)

These allegations are contradictory and, in any event, Defendant  admits that the First Wage Statements do not reflect all hours actually worked in the first pay period.  *See*, Mot. at 7 (stating that the First Paycheck "contains 35 credit hours . . . regardless of how many credit hours are actually earned under the compensation system").  As both parties agree that the First Paycheck did not compensate Plaintiffs for all hours actually worked in the first pay period, Plaintiffs' third

alleged harm of uncertainty and fourth alleged harm of time and effort spent eradicating that uncertainty are moot and, therefore, cannot confer standing.

Even if the Court were to construe the Complaint as alleging that the deficient First Wage Statements caused Plaintiffs to suffer uncertainty about whether they were paid in full after receiving their *Second* Paychecks and wage statements, the Court still would find that Plaintiffs lack standing to maintain their Section 195 claim. For Plaintiffs to confirm whether they have been paid for all hours worked, they would need to compare the number of hours they believe that they worked against the number of hours recorded as worked in their wage statements. Indeed, Plaintiffs confirm this by alleging that to do so "in a pay period where a capped payment occurs," they would have to "demand . . . (if it were possible to do so) other data maintained in JetBlue's payroll system, or maintain highly detailed manual logs of his/her own during each flight day." Compl. ¶ 10. Accordingly, the actual cause of the alleged uncertainty, and the source of their complaints, is not the allegedly deficient First Wage Statements themselves. Instead, Plaintiffs' uncertainty is caused by either: (1) the complicated compensation structure, which, admittedly, hampers Plaintiffs' ability to accurately track their hourly rates; or (2) JetBlue's failure to provide Plaintiffs with timesheets or other contemporaneously recorded logs of time worked, against which Plaintiffs can compare the number of hours recorded in their wage statements. This lack of causal connection between the allegedly deficient First Wage Statements and Plaintiffs' alleged downstream harms deprives Plaintiffs of standing to pursue their Section 195 claim.

12

## CONCLUSION

For the reasons set forth above, Defendant's motion is granted and this action is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
        March 30, 2026

/s/
_____
DORA L.  IRIZARRY
United States District Judge
